IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

CHRISTOPHER J. MOFFAT, et al.,

                Plaintiffs,

-vs-

WAL-MART STORES, INC.,

                Defendants.

CASE NO. 1:11 CV 00103

MEMORANDUM OF OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

UNITED STATES DISTRICT JUDGE LESLEY WELLS

The plaintiffs Christopher J. Moffat, Clarissa E. Thompson, and Patricia A. Schmidt (collectively, "plaintiffs") were employees of Defendant Walmart Stores East, LP[1] ("Walmart"), working in the Lawn and Garden Department at Walmart Store #2073 in Brooklyn, Ohio. On 28 June 2010, the plaintiffs' employment was terminated, after Walmart concluded that the plaintiffs violated the store's Statement of Ethics Policy ("Ethics Policy"). The Ethics Policy prohibits Walmart employees from accepting gifts, gratuity, or entertainment from any Walmart supplier or vendor. The violation in this instance, according to Walmart, occurred when the plaintiffs accepted plants from a

---

[1] The Amended Complaint incorrectly names Wal-Mart Stores Inc. and Wal-Mart Associates, Inc., as defendants. The plaintiffs do not dispute that Walmart Stores East, LP is the only proper defendant in this instance.

supplier who was clearing old stock from the shelves. The plaintiffs admit to accepting the plants, but they maintain that because the plants were destined for the trash, their conduct did not amount to a violation under the policy. The plaintiffs contend that Walmart's stated reason for their dismissal was pretext for termination on the basis of age, in violation of state and federal law. The plaintiffs also claim to present direct evidence of age discrimination on the part of Walmart.

Walmart moves for summary judgment. (Doc. 22). The plaintiffs have filed a brief in opposition (Doc. 26), and Walmart has replied. (Doc. 28). Also before the Court is the plaintiffs' notice of supplemental authority in support of their brief in opposition, to which Walmart has responded. (Doc. 31, 35).

As explained fully in the sections that follow, Walmart's motion is well-taken. In sum, plaintiff Patricia Schmidt fails to establish a prima facie case of discrimination, first, because she was not replaced by someone who is in the non-protected class, and, second, because she fails to present evidence of similarly-situated non-protected employees who were treated more favorably than she. Although plaintiffs Christopher Moffat and Clarissa Thompson successfully make out a prima facie case of age discrimination, their claims ultimately fail because they present no competent evidence that Walmart's proffered reason for their termination was pretext.

I. Background

Defendant Walmart is a retail organization that maintains various offices and stores, including the store where the plaintiffs worked in Brooklyn, Ohio. Plaintiffs Moffat, Thompson, and Schmidt were hired by Walmart in the years 2002, 2000, and 1994, respectively. (Doc. 19-1, pp. 35-36; Doc. 19-2, pp. 9, 21; Doc. 19-3, p. 32). Mr.

2

Moffat and Ms. Thompson were hourly associates of Walmart, and Ms. Schmidt was a non-salaried management employee. (Id.). All three worked in the Lawn and Garden Department at the Brooklyn, Ohio, store. (Id.). The plaintiffs, who were over the age of forty at the time of their terminations, are members of a protected class pursuant to the Age Discrimination in Employment Act of 1967 and Ohio Revised Code 4112.02.

Walmart expects its employees to adhere to the requirements contained in its Ethics Policy. (Doc. 20-4, p. 46; Doc. 19-4, pp. 41-49). As stated in the policy,

> accepting gifts or entertainment can cause a conflict of interest, or the appearance of a conflict between personal interests and professional responsibility. The Walmart culture is to never accept gifts or entertainment from any supplier, potential supplier, government or any any person the associate has reason to believe may be seeking to influence business decisions or transactions.

(Doc. 19-4, p. 48). As Walmart employees, the plaintiffs participated in ongoing training through Computer Based Learning Modules ("CBL"). (Doc. 19-1, pp. 38-39; Doc. 19-2, p. 24; Doc. 19-3, p. 34). It is undisputed that the plaintiffs were required to take, and did take, a CBL related to Walmart's Ethics Policy. (Doc. 19-1, pp. 30, 43; Doc. 19-2, p. 25; Doc. 19-3, p. 42).

The Ethics CBL instructs Walmart employees to "report ethics violations or seek guidance on ethics issues" and to "seek assistance if you [have] any questions about the Statement of Ethics or face an ethical dilemma." (Doc. 19-4, pp. 27-28). The CBL explains that employees may not "accept a gift or gratuity from a Customer," "Member," "Supplier," or "Potential Supplier." (Doc. 19-4, pp. 32-33). Examples of gifts and gratuities, as described in the CBL, include "[d]iscontinued or no longer used samples and merchandise." (Doc. 19-4, p. 33). The CBL also informs employees that violations

3

of the Statement of Ethics may result in disciplinary action "up to and including termination." (Doc. 19-4, p. 34).

The conduct that resulted in the plaintiffs' termination occurred in June 2010, when an employee of third-party supplier Bonnie Plant was clearing the shelves of old plant stock. (Doc. 19-2, pp. 37- 38). The plaintiffs describe plants at issue as "crushed," "bent," "garbage," and "near death." According to Ms. Thompson, the greenhouse was infested with aphids at the time. (Id.). The supplier decided that the plants were better suited to the trash than anything else, and he tossed them on a cart for disposal. (Id.). The supplier asked Ms. Thompson, who was working in the Lawn and Garden Department that day, to throw the plants in the dumpster. (Id.). She remarked that she believed that some of the plants could be salvaged, and the supplier told her "if you can make something out of this, go for it." (Id. at 37). Viewing this as an invitation to adopt the plants, Ms. Thompson informed her co-workers, Mr. Moffat and Ms. Schmidt, of what the Bonnie Plant employee had said to her. The three of them retrieved some of the plants to take home. In her deposition, Ms. Thompson stated that the plants that she took ultimately "thrived," yielding a number of tomatoes and peppers. (Doc. 19-2, p. 46).

The plaintiffs' actions did not go unnoticed by Walmart. While reviewing surveillance camera footage, Debbie Jenkins, Walmart's Asset Protection manager observed all three plaintiffs placing plants in plastic bags, setting the bags aside, and later carrying the bags out of the store.[2] (Doc. 20-2, pp. 63-64). Ms. Jenkins thought this

---

[2] In its brief, Walmart states that Ms. Jenkins saw Ms. Thompson "take a selection of plants off the Store's racks [and] place these plants in the aforementioned

4

conduct was irregular, and she showed the video to her supervisor, Market Asset Protection Manager Joe Theobald. (Id. at 75). Mr. Theobald instructed Ms. Jenkins to conduct an investigation of the matter. (Doc. 20-4, pp. 88).

Ms. Jenkins and Assistant Manager Mario Deloach interviewed Mr. Moffat and Ms. Schmidt, and Ms. Jenkins and Assistant Manager Brandon Donegan interviewed Ms. Thompson. (Doc. 19-1, p. 60; Doc. 19-2, pp. 36, 39, 43-45; Doc. 19-3, pp. 55-57; Doc. 20-1, p. 20). During the interviews, each of the plaintiffs admitted that they took the plants without paying for them. (Doc. 19-1, p. 60, Doc. 19-2, pp. 36, 39, 43-45; Doc. 19-3, pp. 55, 56-67). They explained, however, that as an established practice, the plant supplier Bonnie Plant would allow employees in the Lawn and Garden Department to keep for themselves any plant headed for the trash. (Doc. 20-2, p. 104). The plaintiffs explained that consistent with past practices, Bonnie Plant had given the plaintiffs permission to take the plants. (Doc. 20-2, pp. 79-80, 83, 91, 97, 103, 104). However, during their interviews, each of the plaintiffs admitted that no Walmart salaried member of management had ever given them permission to take any plants. (Moffat Dep. pgs. 60-71; Thompson Dep. pgs. 36-47; Schmidt Dep. pgs. 55-63).

Ms. Jenkins and the managers advised the plaintiffs that their conduct violated Walmart's Ethics Policy. (Doc. 19-2, p. 48; Doc. 19-3, p. 61; Doc. 20-2, p. 123). The plaintiffs claimed that they were not aware that their conduct amounted to an ethical violation. (Id.). The plaintiffs submitted written statements explaining their conduct, in

---

bags . . . ." (See Doc. 22, p. 7). As correctly noted by the plaintiffs, neither Ms. Jenkins' deposition testimony nor any other evidence supports the claim that the plaintiffs took the plants directly from the store racks.

5

which they indicated their belief that it was permissible to take the plants because the plants were trash and the vendor told Ms. Thompson to "go for it."

Ms. Jenkins explained the results of her investigation to Mr. Theobald. He concluded that the plaintiffs' actions amounted to a violation of the Gifts and Entertainment portion of Walmart's Ethics Policy, which prohibits employees from accepting gifts from a supplier. (Doc. 20-4, pp. 70-72, 90-92). Because such a violation is considered gross misconduct, Mr. Theobald terminated the plaintiffs' employment on 28 June 2010. After their termination, Mr. Moffat and Ms. Thompson were replaced by two temporary employees under forty years old. Instead of filling Ms. Schmidt's position, Walmart eliminated it. The duties of managing the Lawn and Garden Department were handed off to an existing employee, Linda Brady, who also managed the Crafts Department at the Brooklyn, Ohio, store.

The plaintiffs brought this lawsuit alleging discrimination based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, and Ohio Revised Code §§ 4112.02 and 4112.99. The defendant moves for summary judgment.

## II. Summary Judgment Standard

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."

6

McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (citing Northland Ins. Co. v. Guardsman Prods., Inc., 141 F.3d 612, 616 (6th Cir. 1998)).

### III. Law and Argument

The plaintiffs assert age discrimination claims under both Ohio and federal law. The same evidentiary framework applies to discrimination claims brought under the ADEA and discrimination claims brought under Ohio state law. Allen v. Ethicon. Inc., 919 F.Supp. 1093, 1098 (S.D.Ohio 1996). Therefore, the analysis that follows applies to both.

The plaintiffs may prove age-based discrimination using either circumstantial or direct evidence. A claim of age discrimination based on circumstantial evidence is evaluated under the McDonnell Douglas burden shifting framework. Geiger v. Tower Automotive, 579 F.3d 614, 620 (6th Cir. 2009). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination; the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its action; and the burden then shifts back to the plaintiff to prove the reason offered by the employer is pretext for intentional discrimination and that intentional discrimination motivated the employer's action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-02 (1973).

*Whether the plaintiffs establish a prima facie case of discrimination*

A plaintiff establishes a prima facie case by showing that he or she (1) was a member of a protected class of persons; (2) was discharged; (3) was qualified for the position held; and (4) was replaced by someone who is in the non-protected class or who was substantially younger. Morgan v. New York Life Ins. Co., 514 F.3d 425, 435

7

(6th Cir. 2009). The fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably. Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir.1992).

In the present case, there is no dispute that Mr. Moffat and Ms. Thompson have established a prima facie case of age discrimination. The defendant contends, however, that Ms. Schmidt has failed to meet her burden, because she has not satisfied the fourth prong of her prima facie case. The defendant indicates, and the plaintiffs do not dispute, that unlike Ms. Thompson and Mr. Moffat, Ms. Schmidt was not replaced by a younger employee. Thus, if Ms. Schmidt is to make a prima facie case she must do so by showing that similarly situated employees in the non-protected class were treated more favorably, pursuant to Mitchell, supra.

To satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar "in all of the *relevant* aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998) (italics in original). This showing does not require "an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" Id. In determining whether the similarly situated requirement has been satisfied, the Court focuses on whether the plaintiff and the comparable employee: (1) share the same supervisor; (2) are subject to the same standards; and (3) have engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. (internal quotation marks omitted).

Ms. Schmidt provides three sets of individuals that she maintains are similarly situated to her. These include (1) non-protected Walmart employees who had also

8

accepted plants from vendors without consequence; (2) non-protected employees who received less severe punishment for violations she claims were more egregious than hers; and (3) non-protected employees who accepted "demo" items from vendors or management without punishment. Ms. Schmidt also contends that Ms. Jenkins, who had reported the plaintiffs' conduct to Mr. Theobald, was disciplined short of termination for conduct substantially similar to hers. The Court addresses these potential comparators in turn.

First, Ms. Schmidt maintains that similarly situated, non-protected Walmart employees had also taken old plants home without having been disciplined. In support, she highlights the testimony of Ms. Thompson, which indicates that on a previous occasion prior to delivery of new stock, Walmart management instructed the associates to "get rid" of the old plants. (Doc. 19-2, p. 39). At that time, she claims, management informed the associates, "[we] don't care what you do with [them]." (Id.). The plaintiffs' deposition testimony identifies three younger employees, Michael Rush, Zori Ortiz, and Katie, who took the old plants without paying for them. The younger employees were not disciplined as a result.

There appears to be no dispute that Michael Rush, Zori Ortiz, and Katie were subject to the same standards and engaged in the same conduct as the plaintiffs. Walmart maintains, however, that these employees are not similarly-situated because they did not share the same supervisor as the plaintiffs.

"[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). "The determination of whether two

9

employees shared the same supervisor is made on a case-by-case basis and does not depend entirely on whether the two shared the same immediate supervisor." Barry v. Noble Metal Processing, Inc., 276 F. App'x 477, 480 (6th Cir. 2008) (citing McMillan v. Castro, 405 F.3d 405, 414 (6th Cir.2005)). Rather, the term "supervisor" should be construed broadly to include cases where both employees' situations were handled by the same "ultimate decision-maker." Id.

In this instance, the Court agrees with Walmart that the three employees identified above are not similarly situated to the plaintiffs, because there is no evidence that they dealt with the same ultimate decision-maker who fired the plaintiffs. In fact, the plaintiffs do not identify who exactly among management previously permitted these individuals to take old plants without paying for them. Further, although the "same supervisor" criterion is not an inflexible requirement, the plaintiffs fail to explain how its flexibility should work to their advantage. For example, in Seay, the Sixth Circuit held that the "same supervisor" criterion is satisfied where "all of the people involved in the decision-making process, including Plaintiff's immediate supervisor and the department manager, were well-aware of the discipline meted out to past violators . . . ." See Seay v. Tennessee Valley Auth., 339 F.3d 454, 480 (6th Cir. 2003). Thus, in this case, if the plaintiffs were to show that Mr. Theobald was aware that Michael Rush, Zori Ortiz, and Katie had been treated differently by other supervisors for the same or substantially similar conduct, the fact that they dealt with a different supervisor might not be relevant. But the plaintiffs offer no such evidence.

Moreover, except for Ms. Thompson's unsupported claim that management "didn't care what they did" with the plants, there is no other evidence that anyone in

10

management, particularly Mr. Theobald, was previously made aware that any associates were accepting old plants from vendors. Ms. Thompson seemed to be under the impression that management knew of the practice, noting that "[i]t wasn't something like we hid and snuck around and did, you know." (See Doc. 19-2, p. 42). But, she ultimately admitted that the practice was never reported to anyone in management. (Doc. 19-2, pp. 40-41). Mr. Moffat also testified that he had never reported the practice to management. (Doc. 19-1, p. 69). The lack of evidence showing that anyone in management knew, prior to the plaintiffs' termination, that associates routinely took old plants is a differentiating circumstance that distinguishes Mr. Theobald's decision to terminate the plaintiffs from management's apparent failure to discipline Michael Rush, Zori Ortiz, and Katie. In sum, Ms. Schmidt fails to establish that these individuals are similarly situated to her.

Ms. Schmidt identifies a second set of non-protected employees at the Brooklyn, Ohio, store who she claims received disciplinary sanctions short of termination for violations at least as severe as that committed by her. These include a 26-year old employee who received a verbal reprimand for passing a bad check; a 19-year old with a previous reprimand for punctuality and attendance, who was disciplined for using a "demo" phone belonging to the store during his shift; a 19-year old who was disciplined short of termination for using her Walmart discount card to ring up two sales for a friend and family member; a 25-year old with previous disciplinary sanctions, who was disciplined after being observed smoking a cigarette and talking on the phone immediately after clocking-in; and a 41-year old who was disciplined for "fail[ing] to sign

11

out a $10,000 csm loan bag" in the cash office–misconduct characterized as an offense involving integrity. (See Doc. 28, pp. 8-9).

In the Court's view, none of these individuals are similarly situated to the plaintiffs. As above, it is undisputed that these employees dealt with different supervisors than the plaintiffs. Mr. Theobald, the decision-maker in this instance, was not involved in disciplining any of them. None of these individuals reported to him, and his name is not found on any of their disciplinary records. Therefore, because these comparable employees were not disciplined by the same ultimate decision maker as the plaintiffs, they are not similarly situated as a matter of law. See Barry, 276 F. App'x at 480.

A third set of potential comparables include those Walmart employees, young and old alike, who accepted other items from vendors or management, including cosmetic samples, mouthwash, pens, greeting card envelopes, lanyards, and pencils. (Doc. 26, pp. 15-16). Ms. Schmidt maintains that the fact that none of the employees who accepted these "demo" items were disciplined demonstrates discriminatory animus as to the plaintiffs. Accepting *in arguendo* that the act of accepting demo items is substantially the same conduct as the act of accepting dying plants, Ms. Schmidt fails to establish these individuals are otherwise similarly situated. There is no evidence identifying the names, ages, or positions of these individuals, and there is no evidence that these individuals dealt with the same supervisor as the plaintiffs. Therefore, as above, the plaintiffs fail as a matter of law to establish that these employees are similarly situated.

Next, Ms. Schmidt suggests that Ms. Jenkins, who reported the plaintiffs to Mr. Theobald, is herself a similarly-situated employee. The plaintiff maintains that Ms. Jenkins was disciplined less harshly for having engaged in conduct that was more egregious than that of the plaintiffs. (Doc. 26, pp. 8-9). According to Ms. Schmidt, after the plaintiffs were terminated, Mr. Theobald disciplined Ms. Jenkins when she failed to conduct an investigation of a ring that went missing from the store's jewelry department. Instead of firing her, Mr. Theobald issued a written reprimand, noting that her conduct was a neglect of job duties and detrimental to the store's performance. (See Doc. 21-1, p. 176). Although the "same supervisor" criterion is not a problem with Ms. Jenkins, it is the Court's view that she is not similarly-situated in relation to the plaintiffs. Ms. Jenkins' conduct is distinguishable because, unlike the plaintiffs, Ms. Jenkins was disciplined for a job performance issue, not for a violation of the Ethics Policy.

Finally, the plaintiffs argue that the Court should draw an adverse inference against Walmart for its failure in discovery to produce the disciplinary histories of a number of employees. In support, the plaintiffs cite Clay v. UPS for the "general rule" that "[w]here relevant information . . . is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." Clay v. United Parcel Serv, Inc., 501 F.3d 695, 712 (6th Cir. 2007).

This argument has no merit. First, the evidence indicates that the documentation sought by the plaintiffs does not exist, since Mr. Theobald testified that he had never investigated any associate, prior to the plaintiffs, who had violated Walmart's Ethics Policy. Further, the plaintiffs are essentially requesting that the Court resolve a

13

discovery dispute in their favor, after the close of discovery and in a manner contrary to the Local Rules. Pursuant to Rule 37.1,

\*\*\*

> [d]iscovery disputes shall be referred to a Judicial Officer only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes.
> 
> \* \* \*
> 
> No discovery dispute shall be brought to the attention of the Court, and no motion to compel may be filed, more than ten (10) days after the discovery cut-off date.

In this instance, the required certification was never filed with the Court, and the time to resolve any discovery dispute has passed. Accordingly, the plaintiffs' argument is without merit.

In sum, Ms. Schmidt has failed to establish that similarly situated individuals were treated more favorably than she was. As a consequence, she has failed to establish a prima facie case of age discrimination. The defendant is accordingly entitled to summary judgment as to Ms. Schmidt's claims under the ADEA and the Ohio Revised Code.

*Whether the Defendant's Legitimate Non-Discriminatory Reason for Termination was Pretext*

On the other hand, there is no dispute that Mr. Moffat and Ms. Thompson have established a prima facie case of age discrimination. Thus, it falls on Walmart to articulate a legitimate non-discriminatory reason for their termination. This Walmart has done by providing evidence that the plaintiffs were terminated because they violated Walmart's rules against accepting gifts from vendors. The burden accordingly shifts

14

back to plaintiffs Mr. Moffat and Ms. Thompson to show that the proffered reason for their discharge was a pretext for illegal discrimination based on age.

A plaintiff may establish pretext by showing (1) that the proffered reason had no basis in fact; (2) that the proffered reason did not actually motivate the actions; or (3) that the proffered reason was insufficient to motivate the actions. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 883 (6th Cir. 1996). "At all times, the plaintiff bears the ultimate burden of persuading the trier of fact that illegal discrimination took place." Id.

In the present case, the plaintiffs do not contest the facts that led to their discharge, as they readily admit placing the plants in plastic bags and taking them home. Instead, they argue that Walmart's decision to terminate them was so unreasonable that it reveals that the proffered reason did not actually motivate the decision. The plaintiffs also maintain that Walmart's stated reason for their discharge was insufficient to motivate its actions.

The Sixth Circuit has held that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir.2003). "An employer's business judgment . . . is not an absolute defense to unlawful discrimination." Id. In this instance, the plaintiffs contend the decision was unreasonable because Mr. Moffat and Ms. Thompson were excellent employees; the plants were headed for the trash; and the vendor gave them permission to take the plants. The plaintiffs further maintain that because the policy contains no definition of the term "gift," the question whether an employee has accepted a "gift" is subjective in nature. This, in the plaintiffs' view,

15

creates "a ready mechanism[ ] for discrimination." Grano v. Department of Dev. Of City of Columbus, 699 F. 2d 836, 837 (6th Cir. 1983). The plaintiffs argue that nothing in the Ethics Policy required Mr. Theobald to fire the plaintiffs. Rather, as Mr. Theobald himself admitted, he could have meted out a lesser form of discipline.

As the defendant points out, the Ethics Policy specifically identifies "[d]iscontinued or no longer used samples and merchandise" as an example of a gift, the acceptance of which is prohibited under the policy. There is no dispute that the plants, "dying" though they may have been, were "discontinued" or "no longer used" merchandise. There is no dispute that the plaintiffs accepted the merchandise from a vendor and took it home. Further, while Mr. Theobald was not required to terminate the plaintiffs, the Ethics Policy gave him the discretion to do so. In sum, the Ethics Policy, the terms of which were known or should have been known to the plaintiffs, prohibited their conduct and authorized the resulting discipline, "harsh," though it may have been. Therefore, Walmart's decision to terminate was not so unreasonable that it reveals a discriminatory motive on its part. And for the same reason, the proffered reason was sufficient to motivate the decision to terminate.

While the Court acknowledges that termination is a harsh penalty for what, from the plaintiffs' perspective, appears to be a relatively minor offense given the particular facts of this case, it is not this Court's role "to act as a 'super personnel department' that second guesses employers' business judgments." Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir.1999). Even "if the court were to disagree with the defendant's reasons for its actions or believe that the defendant was unnecessarily harsh toward the plaintiff," Brown v.

16

Renter's Choice, Inc., 55 F. Supp. 2d 788, 795 (N.D. Ohio 1999), this Court has no grounds for finding pretext except where the plaintiff shows "*both* that the reason [for termination] was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).

In this instance, the plaintiffs provide no evidence by which a jury might reasonably conclude that the proffered reason was not the true reason for the plaintiffs' termination. Moreover, the plaintiffs have not supplied evidence by which the fact finder might reasonably infer the existence of a discriminatory motive. As discussed in detail above, the plaintiffs supply no evidence of similarly situated non-protected individuals who were treated more favorably than the plaintiffs were. The Court is accordingly constrained to conclude that Walmart's stated reason for termination was not pretext for discrimination based on age.

*Whether the plaintiffs provide direct evidence of discrimination*

Next, the plaintiffs argue that they have produced direct evidence of Walmart's discriminatory animus. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted).

The plaintiffs contend they have provided such evidence in the form of a memorandum authored by Susan Chambers, shareholder and then Executive Vice President of Benefits of Walmart. (Doc. 13-3). The memorandum was submitted to Walmart's Board of Directors in 2005, proposing changes to Walmart's benefits policy. In the memo, Ms. Chambers observes an "unacceptable" growth in benefits costs

17

driven by an aging workforce and increasing average employee tenure. (Doc. 13-3, p. 1). To counter the growth, Ms. Chambers recommends creating incentives "like an education offering targeted at students" to attract a "healthier workforce," noting that it is "far easier to attract and maintain a healthier workforce than it will be to change behavior in an existing one." (Doc. 13-3, p. 14). According to the plaintiffs, the memo suggests that employees in Walmart's "aging workforce" with more tenure and who are high-utilizers of health services are the "least attactive segment" of its workforce. (Doc. 13-3, p. 26).

In the Court's view, Ms. Chambers' memo does not lead to the "conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Wexler, 317 F.3d at 570. There is no evidence that Ms. Chambers' remarks, even if they can be construed to show an age bias, bear any relation to Mr. Theobald's decision to terminate the plaintiffs. In the Sixth Circuit, "[a]n isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination." See McDonald v. Union Camp Corp., 898 F.2d 1155, 1161 (6th Cir.1990). In this instance, it is undisputed that Joe Theobald, the decision-maker in this instance, did not draft, receive, or rely on the memo. Therefore, Susan Chambers' memo is not direct evidence of discrimination.

In sum, plaintiffs Mr. Moffat and Ms. Thompson have failed to supply either direct or circumstantial evidence of age discrimination that would require submission to the finder of fact. Summary judgment is accordingly warranted.

## IV. Conclusion

For the reasons stated above, the defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Date: 1 August 2014